537 A.2d 1361

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Jeff LANG, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 13, 1987.

Decided Feb. 26, 1988.

Joseph P. Green, Jr., Norristown, for appellant.

Joseph W. Carroll, III, West Chester, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

FLAHERTY, Justice.

On April 26, 1985 police seized cocaine after executing a search warrant at the home of one Brian Hoskins in Chester County. Hoskins identified his supplier as Jeff Lang, the appellant herein. As a result of this information, a complaint and affidavit were filed against Lang, charging him with possession, possession with intent to deliver, and delivery of cocaine. Lang was then arrested, and at the preliminary hearing, Hoskins testified against Lang, identifying him as the person who sold him cocaine. Lang was held for trial on all charges.

Prior to trial, on January 16, 1986, Lang filed a motion for the disclosure of testimony before the Chester County Investigating Grand Jury. The motion states:

AND NOW, comes the defendant, by his attorneys, Duffy & Duffy, pursuant to Rule 263(b), Pa.R.Crim.P., and respectfully requests that this Honorable Court enter an Order directing the disclosure of certain testimony rendered before the Chester County Investigating Grand Jury, and in support thereof he avers as follows:

1. He is defendant in the above-captioned matter, charged with violating the Controlled Substance, Drug Device and Cosmetic Act.

2. Defendant believes, and therefore avers, that various persons who will be called to testify against him at trial have testified concerning violations of the Controlled Substance, Drug Device and Cosmetic Act before the Chester County Investigating Grand Jury.

3. Defendant believes, and therefore avers, that there may have been testimony given before the Chester County Investigating Grand Jury by prospective witnesses concerning the subject matter of the charges pending against him.

4. Defendant believes, and therefore avers, that certain testimony given by said witnesses before the Chester

County Investigating Grand Jury may prove exculpatory to him.

5. Defendant believes, and therefore avers, that testimony given before the Chester County Investigating Grand Jury by prospective witnesses will contain information of assistance to defendant during cross examination, and relevant to impeachment, of witnesses against him at trial.

6. WHEREFORE, defendant respectfully requests that this Honorable Court enter an Order (1) directing the transcription of the testimony of any prospective witness against him at trial, pursuant to Rule 260, Pa.R.Crim.P., and (2) after review of the said transcripts, Order disclosure of all transcribed testimony concerning violations of the Controlled Substance, Drug Device and Cosmetic Act by witnesses against the defendant, and the disclosure of any testimony given before the Investigating Grand Jury exculpatory to defendant, particularly including evidence which would assist defendant in cross examination and impeachment of Commonwealth witnesses at trial.

Argument on the motion was heard by the Supervising Judge of the Chester County Investigating Grand Jury, and the court entered an order granting the motion in part and denying it in part.

The trial court, pursuant to Pa.R.Crim.P. 260, granted Lang's request that the grand jury testimony of the prospective witness against Lang be transcribed. However, because the court did not agree that Lang is entitled to disclosure of all transcribed testimony concerning a violation of the Controlled Substance, Drug Device, and Cosmetic Act, which might be used against *any* defendant, as relevant to charges against Lang concerning *his* alleged drug violations, the court declined to make available to Lang all testimony before the grand jury concerning drug offenses. Under the court's order, the district attorney must make available at the conclusion of direct examination the grand jury testimony of any witness who appears at Lang's trial.

In response to Lang's request that the court examine the transcripts for *Brady* material, i.e., witnesses which the Commonwealth would not be calling, but which would provide evidence exculpatory to Lang, the court certified that Lang's name appears nowhere in the transcript except in the testimony of Hoskins. Further, the court stated that the prosecution has an affirmative duty to disclose *Brady* material, and declined to open the whole of the grand jury transcripts to Lang for his examination. The Commonwealth also represents that there is no exculpatory evidence with respect to Lang in the Grand Jury testimony; and, additionally, the Commonwealth acknowledges its obligation to disclose exculpatory evidence to the defendant prior to trial, even if such evidence is produced by the investigating grand jury. Comwlth Brief at 28.

The lower court, thus, ordered transcription of the testimony of witnesses likely to appear against Lang at trial, denied Lang's request for a transcription of the entire testimony before the grand jury, and certified that there is nothing of record before the grand jury that is exculpatory. Pointing out that the grand jury in question had been sitting for nearly a year when Lang's motion was made, the court stated its holding as follows:

> My holding today is only that there is nothing *per se* wrong with the district attorney's continuing to use the grand jury to investigate a case, even after the subject of that investigation has been formally charged.

Slip.Op. at 20.

Since the lower court's order is interlocutory, the case arrived before this court by way of a certification of the lower court that its holding involves a controlling question of law as to which there is substantial ground for difference of opinion. This Court granted a petition to seek review on January 13, 1987, and the question before us is whether the lower court was correct in holding that an investigating grand jury may continue to investigate a case even after the subject of the investigation has been formally charged.

■ Lang's claim is that if, after his arrest, any witnesses testified about him before an investigating grand jury "concerning the subject matter of prospective trial testimony," such testimony before the grand jury constitutes an abuse of the grand jury process and is, therefore, exculpatory evidence which must be disclosed pursuant to Pa.R.Crim.P. 263(b)(3).[1]

## I.

The Investigating Grand Jury Act provides, in pertinent part, that an investigating grand jury may be convened as follows:

(a) **General rule.**—In addition to such other grand juries as are called from time to time, county investigating grand juries shall be summoned as provided in subsection (b).

(b) **On the initiative of attorney for Commonwealth.**—Application may be made to the president judge

---

**1.** The Commonwealth has challenged our jurisdiction to hear this appeal on the grounds that neither 42 Pa.C.S. § 722(5) (concerning direct appeals to this Court on matters which affect the convening, supervision, administration, operation, discharge of an investigating grand jury, or any investigation conducted by it), nor 42 Pa.C.S. § 702(b) (concerning interlocutory appeals by permission) confers jurisdiction on this Court.

We agree with the Commonwealth's analysis. Pa.R.App.P. 3331 requires that procedural jurisdiction in this Court for direct appeals from courts of common pleas is limited to matters directly related to the operation of the grand jury investigation, not collateral to it:

[T]his rule [concerning direct and interlocutory appeals to the Pennsylvania Supreme Court] is not applicable to review of investigating grand jury issues which collaterally arise in a plenary criminal prosecution initiated by complaint, information or indictment.

Note to Pa.R.App.P. 3331. Lang's criminal prosecution is a plenary matter which did not arise from any grand jury proceeding, but as the result of independent investigation. We conclude, therefore, Rule 3331 limits the application of 42 Pa.C.S.A. § 722(5) so as to deprive this Court of procedural jurisdiction in this case. The fact that this Court agreed to address a question certified by the lower court does not, of itself, confer procedural jurisdiction where it does not otherwise exist.

However, in order to conserve judicial resources, speed the criminal trial in this case, and provide guidance for the lower courts as to a question that is likely to recur, we assume jurisdiction of the case pursuant to our King's Bench Powers, 42 Pa.C.S.A. 726.

of the appropriate court of common pleas by the attorney for the Commonwealth for an order directing that a county investigating grand jury be summoned, *stating in such application that the convening of a county investigating grand jury is necessary because of the existence of criminal activity within the county which can best be fully investigated using the investigative resources of the grand jury.* Within ten days of receipt of such application, the president judge shall issue an order granting the request. The order shall specify which judge is to be the supervising judge of the county investigating grand jury. Refusal to grant an application under this subsection shall be appealable to the Supreme Court in the manner prescribed by general rule.

42 Pa.C.S.A. § 4543. (Emphasis added.) Once an investigating grand jury is convened, an investigation may be commenced as follows:

Before submitting an investigation to the investigating grand jury the attorney for the Commonwealth shall submit a notice to the supervising judge. This notice shall allege that the matter in question should be brought to attention of the investigating grand jury *because the investigative resources of the grand jury are necessary for proper investigation.* The notice shall allege that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter.

42 Pa.C.S.A. 4550(a). (Emphasis added.)

In *Appeal of Krakower,* 500 Pa. 557, 459 A.2d 304 (1983), we commented on the jurisdictional requirements of the Investigating Grand Jury Act as follows:

Central to the Act's purpose is the *necessity* of the grand jury's resources in order to adequately *investigate* and *uncover* criminal activity. Conversely, the normal law enforcement resources of the District Attorney's office must be inadequate as a jurisdictional predicate to a submission before an investigating grand jury.

500 Pa. at 563, 459 A.2d at 307. (Emphasis in original text.) In essence, the *Krakower* decision restates and clarifies the requirements of the Investigating Grand Jury Act concerning the jurisdiction of an investigating grand jury.

Section 4543 does not limit the type of criminal activity which the grand jury may investigate: it may investigate any "criminal activity within the county which can best be fully investigated using the investigative resources of the grand jury." There is no statutory provision which prohibits grand jury investigations of crimes which already have been charged. In fact, the act makes no differentiation between criminal activity in which charges already have been made and criminal activity in which no charges have yet been filed. It simply says that an investigating grand jury may look into "the existence of criminal activity," which, of necessity, includes the criminal activity charged against Lang in this case.

■ We conclude, thus, that the jurisdictional provisions of the Investigating Grand Jury Act and our decision in the *Krakower* case allow an investigating grand jury to call witnesses concerning criminal activity in the county, even if charges have already been filed with respect to that criminal activity, so long as: (a) there is a necessity for the grand jury's resources in order to (b) adequately investigate and uncover criminal activity.[2]

## II.

Although Lang's challenge to the lower court's order is primarily a matter of statutory interpretation involving the question of whether the lower court correctly interpreted the Investigating Grand Jury Act, he also raises a due process challenge to the effect that the lower court's ruling "violates his rights to fundamentally fair pretrial procedures."

**2.** There is no allegation in this case that the investigation was improperly submitted to the grand jury, and we do not, therefore, consider whether the the district attorney made appropriate allegations concerning the need for a grand jury investigation in this case.

When witnesses in a criminal case have also testified before an investigating grand jury, the following discovery rule applies:

**(b). Defendant in a Criminal Case:**

\* \* \* \* \* \*

(2) When a witness in a criminal case has previously testified before an investigating grand jury concerning the subject matter of the charges against the defendant, upon application of such defendant the court shall order that the defendant be furnished with a copy of the transcript of such testimony; however, such testimony may be made available only after the direct testimony of that witness at trial.

(3) Upon appropriate motion of a defendant in a criminal case, the court shall order that the transcript of any testimony before an investigating grand jury that is exculpatory to the defendant, or any physical evidence presented to the grand jury that is exculpatory to the defendant, be made available to such defendant.

Disclosure of Testimony Before Investigating Grand Jury, Pa.R.Crim.P. 263(b)(2), (3). Physical evidence, scientific tests, inculpatory statements and the like are discoverable under Pa.R.Crim.P. 305:

(1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused which is material either to guilt or to punishment, and which is within the possession or control of the attorney for the Commonwealth;

(b) any written confession or inculpatory statement, or the substance of any oral confession or inculpatory statement, and the identity of the person to whom the

confession or inculpatory statement was made, which is in the possession or control of the attorney for the Commonwealth;

(c) the defendant's prior criminal record;

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

(e) results or reports of scientific tests, expert opinions, and written or recorded reports of polygraph examinations or other physical or mental examinations of the defendant, which are within the possession or control of the attorney for the Commonwealth;

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence;

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

What is at issue is whether Rule 263(b)(2) and (3) and Rule 305 adequately protect Lang's due process rights.

■ As the lower court and the Commonwealth point out, pursuant to Rule 263, when the Commonwealth has investigated a crime by way of the investigating grand jury, and testimony or evidence from the grand jury proceedings is used at trial, the defendant has access to the testimony given before the grand jury and any exculpatory evidence produced during the grand jury investigation. If the Commonwealth has additional testimony unfavorable to defendant that it does *not* use at trial, the defendant would not be entitled to review that testimony, but then neither would he be harmed by such testimony.

The trial court also points out that when the criminal activity of a defendant has been investigated by a grand jury, the defendant actually may be in a more favorable position than if there had been only a routine police investigation:

Arguably, that the witness testified before the grand jury gives the defendant greater safeguards than if he had had his testimony "frozen" by speaking into a tape re-

corder at the station house. The presence of a certified court reporter, the supervision of a judge, and also, most significantly, the presence of disinterested citizens, the distillation of the populace of the judicial district, free to ask questions themselves, and perhaps to pry into areas which the prosecutors may have avoided, intentionally or unintentionally, in many ways make the "freezing" of the statement before a grand jury a procedure less prejudicial to the defendant than were that done privately in the back room of a police barracks.

Slip.Op. at 16–17. Furthermore, as the Commonwealth suggests, it is entirely possible that during ordinary police investigations, some witness statements might not be recorded at all, or if they are, certain parts of such statements might be omitted. However, when a witness appears before a grand jury, his testimony, of necessity, is recorded in its entirety and will be available to the defendant if the witness testifies at the defendant's trial.

Finally, the lower court observes that if a grand jury investigation were disallowed once an arrest had been made and a crime had been formally charged, prosecutors would delay the filing of certain criminal charges in order to preserve their right to use the investigational resources of the grand jury. This delay, in turn, might well prejudice a defendant by delaying trial and impeding a defendant's ability to identify witnesses whose memories are fresh, who can be located, and who are reachable through legal process.

■ We agree with these observations of the Commonwealth and the lower court, and we hold that where the jurisdictional predicate discussed in *Krakower* is satisfied, the Investigating Grand Jury Act permits an investigating grand jury to investigate the criminal activities of an individual even after that person has been charged with a crime, and that in the context of our discovery rules, such

an investigation does not violate due process.[3]

Affirmed.

**3.** We find no merit in Lang's assertions that federal caselaw requires us to hold that the procedures which we approve today are in fact unconstitutional. The constitutional balance of the sort required by *Wardius v. Oregon*, 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), concerning notice-of-alibi rules, is adequately addressed by our requirement that transcripts of grand jury testimony of certain witnesses must be available to a criminal defendant when those witnesses testify against the defendant at trial, and by our requirement that any exculpatory materials, whether from a grand jury investigation or not, must be turned over to a criminal defendant.

Furthermore, statements in *United States v. Moss*, 756 F.2d 329, 332 (4th Cir., 1985) and *In Re Grand Jury Proceedings (Appeal of Johanson)*, 632 F.2d 1033, 1040 (3d Cir., 1980), which forbid the continuance of grand jury investigations for the sole or dominant purpose of obtaining evidence against a defendant once he is indicted, we regard as limited to the federal schema and as inappropriate to Pennsylvania.