

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-11-2004

# Lee v. Stickman

Precedential or Non-Precedential: Precedential

Docket No. 02-3497

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Lee v. Stickman" (2004). *2004 Decisions.* Paper 959.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/959

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL
UNITED STATES COURT OF
APPEALS
FOR THE THIRD CIRCUIT

_____

No: 02-3497

_____

KENNETH LEE,

Appellant

v.

WILLIAM STICKMAN;
STEPHEN ZAPPALA, JR.;
MICHAEL FISHER

_____

Appeal from the United States District
Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 02-cv-01013)
District Judge: Honorable Robert J.
Cindrich

_____

Argued on December 18, 2003

Before: ROTH, MCKEE and
CUDAHY* , Circuit Judges

(Opinion filed: February 11, 2004)

_____

*The Honorable Richard D.
Cudahy, Circuit Judge for the United
States Court of Appeals for the Seventh
Circuit, sitting by designation.

Stephen J. Binhak, Esquire (Argued)
3103 Philmont Avenue
Huntingdon Valley, PA 19006

Counsel for Appellant


Ronald M. Wabby, Jr., Esquire (Argued)
401 Allegheny County Courthouse
Pittsburgh, PA 15219

Counsel for Appellees

_____

O P I N I O N

_____

CUDAHY, Circuit Judge

This is an appeal by Kenneth Lee from an order of the United States District Court for the Western District of Pennsylvania dismissing his petition for a writ of habeas corpus on the ground that he had failed to exhaust available state court remedies. Lee contends that we must excuse the exhaustion requirement because of the eight-year delay in his post-conviction collateral proceedings in the Pennsylvania state courts. We agree. We therefore reverse the order of the district court and remand the case for consideration of Lee's habeas petition on the merits.

I.

If William Shakespeare were to summarize Lee's experience with the Pennsylvania state courts, he might describe it as "a tale told by an idiot, full of sound and fury, signifying nothing."

William Shakespeare, Macbeth, act 5, sc. 5., lines 26-28. The epic begins on April 30, 1992, when a jury convicted Lee of possession of cocaine, possession with intent to deliver cocaine and resisting arrest. On June 25, 1992, Lee was sentenced by the Court of Common Pleas of Allegheny County to 1.5 - 5 years imprisonment followed by five years of probation. After an unsuccessful direct appeal, Lee filed a *pro se* petition under the Pennsylvania Post Conviction Relief Act ("PCRA") on February 13, 1995. 42 Pa. Cons. Stat. Ann. § 9541 *et seq*. In his PCRA petition, Lee raised five arguments: (1) the trial judge abused his discretion in denying a motion to suppress; (2) the trial judge wrongfully denied a motion to arrest judgment; (3) one of the jurors was biased because of his employment with the Allegheny County Court of Common Pleas; (4) the evidence did not support a conviction; and (5) the trial judge wrongfully cross-examined Lee in front of the jury. Most of these arguments have never been considered on the merits by any court.

On February 28, 1995, a PCRA counsel was appointed for Lee. On May 11, 1995, after hearing nothing from the court, Lee filed a Petition For Writ of Habeas Corpus in the same court. This petition was denied because the PCRA petition was pending. On June 1, 1995, PCRA counsel requested that he be relieved as counsel since Lee wanted to represent himself. This request was granted. On June 6, 1995, the court ordered Lee to provide notice of whether he intended to pursue his PCRA petition *pro se*. The order noted that if Lee failed to provide notice within thirty days, the petition would be dismissed.

For reasons unknown to this Court, Lee did not respond to this order. In January 1996, Lee was still awaiting a decision on his PCRA petition, so he filed a Motion for Relief / Disposition Without Hearing. In this application, Lee reiterated the jury bias claim, but did not reassert the other claims he had made in the PCRA petition. On February 25, 1996, the court dismissed Lee's Motion for Relief / Disposition Without Hearing, explaining that Lee had waived the right to challenge the juror by not raising the issue earlier. On August 16, 1996, *eighteen months after Lee submitted the PCRA petition*, the court dismissed that petition for the sole reason that Lee had failed to indicate whether he would proceed *pro se*. On August 25, 1996, Lee appealed this dismissal.

On March 17, 1998, *eighteen months after this appeal*, the Superior Court of Pennsylvania vacated the August 16, 1996 Order of the lower court because the Court of Common Pleas had failed to provide notice of intent to dismiss the PCRA petition, notice of the reasons for dismissal and an opportunity for Lee to respond before dismissal. The Superior Court also noted that Lee had made clear his intent to proceed *pro se* long before the Court of Common Pleas dismissed his petition. App. Vol. II at 114 n.1.[1]

---

[1] The appendix annexed to Petitioner's brief in this case will be designated as

On August 14, 1998, *five months later*, the Court of Common Pleas issued a new opinion in response to the ruling of the Superior Court. This new opinion, however, mistakenly did not address the PCRA petition, but instead addressed only the Motion for Relief / Disposition Without Hearing, which it had already dismissed. Nonetheless, the court concluded its opinion by ordering that the PCRA petition be dismissed within twenty days unless Lee could show cause why the court should rule otherwise. Within that deadline, Lee filed a response in which he reiterated the five claims in his original PCRA petition and also added an ineffective assistance of counsel claim. On September 23, 1998, the trial court dismissed the PCRA petition without further comment.

Lee filed a timely appeal on October 17, 1998. The case was not submitted for a panel review in the Superior Court *until almost three years later*, in September of 2001. According to the Superior Court the delay occured because "[i]nexplicably, the trial court record was not . . . filed in this Court until April 2001." *Id*. at 201. On March 20, 2002, *almost six months after the case had been submitted for review*, the Superior Court issued its decision. The Superior Court noted that "[t]he procedural history in this case is torturous" and called it "an ongoing odyssey of litigation." *Id.* at 200-01. Nonetheless, instead of deciding the PCRA petition on the merits or directing

the Court of Common Pleas to do so, the Superior Court remanded the case to the Court of Common Pleas to determine whether Lee was still serving his sentence.[2]

On June 25, 2002, Lee filed a Third Amendment to the PCRA petition, attempting to highlight the fact that no court had addressed his claims. The Commonwealth moved to dismiss this application contending that Lee had served his sentence in full. On July 19, 2002, the Commonwealth withdrew this motion when it realized that Lee was still serving his sentence. On February 25, 2003, *almost a year after the remand*, the Court of Common Pleas reinstated its September 23, 1998 Order. Lee appealed this decision to the Superior Court, which has not yet ruled on his appeal.

On June 5, 2002, Lee filed a Petition for Writ of Habeas Corpus in the United States District Court. In that petition, Lee alleged ineffective assistance of counsel at the trial and appellate level, denial of due process, denial of fair trial, denial of equal protection and prosecutorial misconduct. Lee also filed a brief explaining his failure to exhaust state remedies. On September 3, 2002, the U.S. District Court dismissed the habeas petition for failure to exhaust state remedies. At the time of this appeal, Lee was serving probation which was scheduled to end on

---

"App."

[2] On May 1, 2002, Lee petitioned the Superior Court for additional relief, but that petition was denied.

October 10, 2003.

## II.

Under ordinary circumstances, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented each of his claims to the state's highest tribunal. *See* 28 U.S.C. §§ 2254 (b), (c); *Rose v. Lundy*, 455 U.S. 509, 515-16 (1982). Exhaustion, however, is not a jurisdictional matter but a matter of comity. *See Story v. Kindt*, 26 F.3d 402, 405 (3d Cir. 1994). Federal courts need not defer to the state judicial process when there is no appropriate remedy at the state level or when the state process would frustrate the use of an available remedy. *Id.*; 28 U.S.C. § 2254(b)(1)(B). We have held that "inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable." *Wojtczak v. Fulcomer*, 800 F.2d 353, 354 (3d Cir. 1986). The existence of an inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required. *Story*, 26 F.3d at 405 (noting that this burden is "difficult to meet").

In the past, we have excused the exhaustion requirement for petitioners who have undergone significantly shorter delays than presented here. *Wojtczak*, 800 F.2d 353, 356 (33 month delay between filing PCRA and habeas petitions); *Burkett v. Cunningham*, 826 F.2d 1208, 1210-11 (3d Cir. 1987) (five year delay in sentencing); *United States ex rel. Senk v. Brierley*, 471 F.2d 657, 660 (3d Cir. 1973) (three and a half year delay); *United States ex rel. Geisler v. Walters*, 510 F.2d 887, 893 (3d Cir. 1975) (stating in *dicta* that three years and four months to decide a motion for a new trial was an inordinate delay sufficient to obviate the exhaustion requirement). The government attempts to distinguish this precedent by noting that these cases were inactive for years (i.e., no hearings, decisions, etc.) while in Lee's case there has been a great deal of movement. Gov't. Br. at 28. The same, however, can be said for a grand mal seizure. Unfortunately, in both cases, the movement is painful and aimless.

It took the lower court *eighteen months* to dismiss Lee's petition for the sole procedural reason that Lee failed to officially state whether he intended to proceed *pro se*. It then took another *eighteen months* for the Superior Court to vacate that order and remand the petition. When the lower court finally decided the petition on the merits, it decided the *wrong petition*. Due to what appears to be an administrative error (or a string of such errors), the record was not available to the appellate court until almost *three years* later. It was not until *another six months* later that the appellate court remanded the case. However, the remand was *solely* to determine whether Lee was still in custody. It then took *almost a year* for the lower court to reinstate its dismissal. As far as we know the appellate court still has not ruled on this dismissal. The arguments made in Petitioner's initial PCRA petition have still not been

considered by any court. This ping-pong game the state court was playing with Lee's petition would almost be comical if Lee had not been in custody this entire time awaiting resolution.

In deciding whether a delay is excessive, we do consider the degree of progress made in state court. *See, e.g., Cristin v. Brennan*, 281 F.3d 404, 411 (3d Cir. 2002) (holding that a 27 month delay was not excessive given that a hearing was held and the petition was ruled upon). In this case, however, we do not believe that any real progress has been made. Regardless, it is difficult to envision any amount of progress justifying an eight-year delay in reaching the merits of a petition.

The government now has the chutzpah to suggest that Lee should have first presented this "inordinate delay" claim to the state court. Gov't. Br. at 24. If only finite life-spans would permit. Given that it has thus far taken eight years for the state court to consider Lee's collateral attack, we can only imagine how long it would take to decide whether it is taking too long. Thankfully, there is no requirement that a petitioner seeking to excuse the exhaustion requirement first articulate the grounds therefor in state court. The case upon which the government relies for that proposition, *Schandelmeier v. Cunningham*, 819 F.2d 52, 54 (3d Cir. 1986), is inapposite. Unlike the present case, the substantive basis for Schandelmeier's habeas claim was, itself, the delay in state court. *Id.* at 54 ("His habeas petition . . . is based entirely upon the delay in the state court's ruling on his motions, and the concomitant delay in sentencing him."). Thus, *Schandelmeier* stands for the unremarkable proposition that the allegations underlying a habeas petition must first be presented for consideration in state court. *Id.* In the present case, however, Lee's petition is not *based on* the state court delay but on other alleged constitutional violations. Moreover, Schandelmeier was unable to show that "there was no opportunity for him to obtain redress in the state court system" because "[t]he only actions taken by Schandelmeier to obtain state relief on the grounds asserted in his federal petition [were] the letters that he allegedly wrote to the trial court." *Id.* at 53-54. In contrast, Lee has done all that can reasonably be expected to pursue his claim in state court. "[I]t is the legal issues that are to be exhausted, not the petitioner." *Burkett*, 826 F.2d at 1218 (quoting *Walters*, 510 F.2d at 893). Therefore, we decline the government's invitation to return Lee's petition to legal purgatory.

To add insult to injury, the government concludes that "appellant will not be entitled to relief" because "as of October 3, 2003 appellant will fail to satisfy the 'in custody' requirement [of §2254(a)], [as] his sentence will be completed." Gov't. Br. at 30 n.10. However, what matters for the "in custody" requirement is whether Lee was in custody *at the time his habeas petition was filed. See* 28 U.S.C. § 2254; *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). It is equally clear that being on probation meets the "in custody" requirement for

purposes of the habeas statute. *See Mabry v. Johnson*, 467 U.S. 504, 507 n.3 (1984) (prisoner on parole remains "in custody" for purposes of 28 U.S.C. § 2254); *Barry v. Brower*, 864 F.2d 294, 296 (3d Cir. 1988) ("We can see no material difference between probation and parole in applying the 'in custody' requirement of § 2254."). Because it is not disputed that Lee was on probation at the time his federal habeas petition was filed, it is clear that he was "in custody" for purposes of the habeas statute.[3]

------

[3] The Supreme Court has explained that the federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989). The fact that Lee is attacking his original conviction and sentence but is "in custody" as a result of a probation violation is inconsequential. Under Pennsylvania law, a violation of probation is not considered a separate offense but an element of the original sentence. *See Commonwealth v. Pierce*, 497 Pa. 437, 441, 411 A.2d 1218, 1220 (1982) ("The imposition of total confinement upon revocation of appellant's probation was not a second punishment for his robbery conviction, but was an integral element of the original conditional sentence."); *Commonwealth v. Colding*, 482 Pa. 112, 393 A.2d 404 (1978) (holding that the revocation of probation and the imposition of a term of total confinement was not violative of the double jeopardy clause, since the defendant was given

Nor is Lee's appeal moot. *See United States v. Frumento*, 552 F.2d 534 (3d Cir. 1977) (*en banc*). In *Frumento*, we noted that "an appeal is not moot even though the appellant has been released from custody or has served his sentence if he has taken all possible steps to have the order of confinement promptly reviewed prior to his release." *Id.* at 537, *citing Sibron v. State of New York*, 392 U.S. 40, 53 (1968) ("[A] state may not effectively deny a convict access to its appellate courts until he has been released and then argue that his case has been mooted by his failure to do what it alone prevented him from doing."); *cf. Fay v. Noia*, 372 U.S. 391, 424 (1963) ("[C]onventional notions of finality in criminal litigation cannot be permitted to

------

one conditional sentence which merely deferred sentencing the defendant to a fixed term of total confinement until such time as he violated the conditions of his probation); 42 Pa. Cons. Stat. Ann. § 9771(b) ("Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation."). The same is true under federal law. *See United States v. Hidalgo-Macias*, 300 F.3d 281, 285 (2d Cir. 2002) (compiling cases); *United States v. Thomas*, 961 F.2d 1110, 1119 (3d Cir. 1992) ("For parole and probation revocations, the Guidelines specify that the original sentence and the sentence imposed after probation is revoked are added and counted as if they were one sentence.").

defeat the manifest federal policy that federal constitutional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review.").[4] In the present case, we find that Lee took all possible steps to have his claims promptly reviewed prior to his release. While it is true that Lee could have brought his federal habeas petition earlier in the hope that we would have excused the exhaustion requirement, the success of such efforts would be mere speculation. Moreover, we cannot fault Lee for first attempting to exhaust state remedies.

In summary, Lee has shown that, at the time he filed his federal habeas corpus petition, his PCRA petition had been before the Pennsylvania state courts for almost eight years with no resolution. Under these circumstances, the burden was on the government to demonstrate why Lee should continue to wait for

Godot. The government has not met this burden.[5] We therefore conclude that Lee should be required to wait no longer and that the district court should entertain his petition on its merits.[6] *See Wojtczak*, 800 F.2d at 356. We reverse and remand for that purpose.

---

[4] In subsequent cases, we noted that this exception to mootness only applies where a "personal liberty interest is at stake." *Matter of Kulp Foundry, Inc.*, 691 F.2d 1125, 1129 (3d Cir. 1982) (holding that the exception does not apply to OSHA inspection cases). There can be no question, however, that a personal liberty interest is at stake in the present case. *See Matter of Establish Inspection of Metal Bank of America, Inc.*, 700 F.2d 910, 913 n.3 (3d Cir. 1983) ("[A] personal liberty interest *such as imprisonment* must be at stake for the *Frumento* exception to apply.") (emphasis added).

---

[5] We note that if we were to affirm the district court and thus require Lee to exhaust his state remedies, he would never be able to file a federal habeas petition because he would not meet the "in custody" requirement at the time of the filing of his petition. *See* 28 U.S.C. §2254(a). This is one reason we have suggested that "when petitioners have filed habeas actions in federal court before they have fully exhausted their state remedies . . . the federal action should be stayed" rather than dismissed as premature. *Merritt v. Blaine*, 326 F.3d 157, 170 n.10 (3d Cir. 2003) (compiling cases).

[6] In the event that the district court is inclined to dismiss any of Lee's claims on procedural grounds, we strongly urge that, if possible, it also analyze and rule on the merits of those claims so that Lee's unfortunate experience in state court is not repeated here.