

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2005

# Wallace v. Dragovich

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2422

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Wallace v. Dragovich" (2005). *2005 Decisions.* Paper 792.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/792

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 04-2422
_____

MARK WALLACE,
a/k/a Mark Green

v.

MARTIN DRAGOVICH, Superintendant SCI Camp Hill Prison;
LYNNE ABRAHAM, Commonwealth of Pennsylvania District Attorney Philadelphia
County; THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;

Mark Wallace,
Appellant
_____

Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No.: 02-cv-06269
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a) July 12, 2005

Before: SLOVITER, McKEE, and ROSENN, Circuit Judges.

(Filed:  July 22, 2005)
_____

OPINION OF THE COURT
_____

ROSENN, Circuit Judge.

Mark Wallace appeals an order of the United States District Court for the Eastern

District of Pennsylvania dismissing without prejudice his 28 U.S.C. § 2254 petition for a writ of habeas corpus on the ground that he failed to exhaust available state court remedies. Wallace contends that he satisfied the exhaustion requirement but argues that even if he has not, we must excuse exhaustion because of the forty-one month delay in his post-conviction proceedings in the Pennsylvania state courts. We do not agree. Because Wallace has failed to exhaust available state remedies and because there is no valid reason to excuse exhaustion, we will affirm.[1]

I

The procedural history of this case is extremely involved and somewhat confusing. It contains duplicative motions, parallel proceedings, multiple continuances, numerous filings, chaotic changes of counsel, petitions to proceed pro se, and confusing replacements of judges. To focus clarity, we include only those facts relevant to the issues on appeal.

Wallace was convicted of conspiracy to commit arson on September 8, 2000, in the Court of Common Pleas of Philadelphia County. The trial was the second set of proceedings against Wallace for the same offense. Wallace's first trial, a bench or "waiver" trial, was terminated in December, 1999, after the trial judge determined

---

[1]The District Court had jurisdiction based on 28 U.S.C. § 2254 and we have jurisdiction pursuant to 28 U.S.C. §§ 2253, 1291. In a federal habeas proceeding, we exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its factual findings. See Caswell v. Ryan, 953 F.2d 853, 857 (3d Cir. 1992).

Wallace had violated state discovery rules. Following his conviction in the second trial, Wallace waited over 18 months to be sentenced. The sentencing delay was caused by several factors. Among them, the state of Pennsylvania (the "state")[2] failed to deliver Wallace from incarceration to the court proceedings on five separate occasions (October, 25, 2000, November 22, 2000, March 9, 2001, April 20, 2001, and March 14, 2002). In addition, the trial court continued the proceedings on its own motion six different times (January 24, 2001, June 4, 2001, September 19, 2001, September 28, 2001, October 4, 2001, and February 5, 2002). Also, Wallace's defense counsel twice requested and received continuances (February 5, 2001, and June 29, 2001). Another factor delaying sentencing was Wallace's post-verdict motions which alleged, inter alia, that the first trial was terminated without manifest necessity and the second trial violated his 5th Amendment right not to be placed in jeopardy twice for the same offense. After Wallace's post-verdict motions were denied on April 12, 2002, he was sentenced five to ten years imprisonment.

Approximately two months prior, on February 6, 2002, Wallace filed a petition for writ of habeas corpus in the Pennsylvania Superior Court, but the petition was denied for lack of jurisdiction. Wallace then filed, but was denied without opinion, an Application

---

[2]To avoid confusion, the state of Pennsylvania judicial system is referred to as the "state," while the prosecution in this case is referred to as the "Commonwealth."

for Extraordinary Relief in the Supreme Court of Pennsylvania.[3]

Wallace filed post-sentencing motions and a motion for sentence reconsideration on April 16, 2002.  Although a June 7, 2002, hearing date was set to consider the motion for reconsideration, Wallace was not brought down to the courthouse on June 7, 2002, or July 23, 2002, thereby necessitating a continuance on both occasions.  Likewise, Wallace was not brought down to the courthouse for hearings on his post-sentencing motions on September 25, 2002, or October 28, 2002, necessitating continuances on both dates.  On December 19, 2002, the trial court allowed counsel for Wallace to withdraw for a third time and although new counsel entered an appearance, Wallace was not brought down to the courthouse, this time due to supposed "joint state/ federal custody issues."

On January 8, 2003, Wallace filed a second habeas corpus petition in state court, this one under the alias "Mark Green."  However, the petition was dismissed without prejudice on January 30, 2003.   Wallace filed another federal habeas petition under the name "Mark Brown" on March 25, 2003, but the petition was denied with prejudice as successive to the instant habeas petition.

Approximately six weeks prior, on February 12, 2003, and some fourteen months

---

[3]The section of the Pennsylvania judicial code covering Extraordinary Relief, 42 Pa. Cons. Stat. Ann. § 726 (West 1981), provides:

> Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

after filing, Wallace's motion for reconsideration and post-sentencing motions were denied by operation of law pursuant to Pa. R. Crim. P. Rule 720.[4] Although Wallace filed a timely notice of appeal, he failed to file a concise statement of the appeal as required by Pa. R. App. P. Rule 1925(b). On May 22, 2003, the judge ordered Wallace to file a Rule 1925(b) statement, which Wallace filed on June 4, 2003. Still, Wallace's appeal was unable to move forward because the trial judge had failed to file an opinion as required by Pa. R. App. P. Rule 1925(a). On January 14, 2004, nearly eleven months after the notice of appeal was filed, the Superior Court of Pennsylvania ordered the trial judge to file an opinion. The Superior Court also ordered the Prothonotary of the Superior Court to establish a briefing schedule.

While the post-sentencing motions were pending, Wallace filed the instant habeas corpus petition in federal court on July 31, 2002, asserting, inter alia, violations of his constitutional rights to a speedy trial, due process, and prohibitions against double jeopardy. Wallace amended the petition on December 23, 2003, to add a claim for ineffectiveness of counsel. On February 17, 2004, the District Court dismissed the petition without prejudice for failure to exhaust state remedies. Wallace moved for

_____

[4]Pa. R. Crim. P. Rule 720, "Post-Sentencing Procedures; Appeal," provides in relevant part:

> Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.

reconsideration of the due process claim only. He also sought a conditional writ based on his due process claim, requesting discharge from incarceration pending the resolution of his direct appeal in state court. On April 30, 2004, the District Court denied the motion for reconsideration. Wallace timely appealed.

II

Ordinarily, a federal court may not entertain a petition for a writ of habeas corpus unless the petitioner has first presented his claims for relief to each level of the state courts. Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); 28 U.S.C. §§ 2254(b), (c). This doctrine, the aptly-termed exhaustion doctrine, "is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

However, inexcusable or inordinate delay by the state in processing claims for relief may render the state remedy effectively unavailable. Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986). When inexcusable or inordinate delay renders the state remedy ineffective, exhaustion may be excused. Id. The presence of "inordinate delay does not automatically excuse the exhaustion requirement, but it does shift the burden to the state to demonstrate why exhaustion should still be required." Lee v. Stickman, 357 F.3d 338, 341 (3d Cir. 2004).

Wallace asserts that the District Court wrongly dismissed his petition because he satisfied the exhaustion requirement of 28 U.S.C. § 2254(c) by filing two separate

6

petitions for writs, one in the Pennsylvania Superior Court and one in the Pennsylvania Supreme Court. In addition, Wallace asserts that his petition for Extraordinary Relief to the Pennsylvania Supreme Court provided the state with a full opportunity to review his claims for the purposes of exhaustion.

Wallace argues in the alternative that even if these petitions failed to satisfy the exhaustion requirement, exhaustion must be excused because the forty-one month delay between his conviction and presentation of his appeal before the Superior Court has rendered the state remedy effectively unavailable.

The Commonwealth counters that Wallace has failed to exhaust his state remedies and, therefore, the District Court correctly dismissed the petition. In addition, the Commonwealth argues that exhaustion should not be excused because the delay did not render the state processes ineffective and Wallace and his counsel contributed to the delay.

As a threshold matter, at least as of the date the District Court dismissed the instant habeas petition, the Pennsylvania Superior Court and the Pennsylvania Supreme Court have not yet been presented with Wallace's direct appeal of the conviction. Although Wallace filed habeas petitions in both the Pennsylvania Superior and Supreme Courts, as well an Application for Extraordinary Relief in the Pennsylvania Supreme Court, these fail to satisfy the exhaustion requirement because exhaustion requires that "state prisoners . . . give the state courts one full opportunity to resolve any constitutional

7

issues by invoking one complete round of the State's <u>established appellate review</u> <u>process</u>." <u>O'Sullivan</u>, 526 U.S. at 845 (emphasis added). The habeas writs and Application for Extraordinary Relief, by definition, bypass the normal appellate process[5] and therefore fail to satisfy the exhaustion requirement of the federal habeas statute.

Because Wallace did not first present his claims to Pennsylvania's established appellate review process, we must decide whether to excuse the exhaustion requirement. To make this determination, we must first ascertain whether Wallace has established inordinate delay, and then determine if the Commonwealth has demonstrated why exhaustion should still be required. <u>Stickman</u>, 357 F.3d at 341.

1.    <u>Inordinate Delay</u>

In this case, twenty-nine months passed between Wallace's conviction and final disposition of his post-trial motions. Another eleven months elapsed between Wallace's notice of appeal and presentation of the appeal to the Pennsylvania Superior Court. Wallace asserts the delays are inordinate and attributable largely to the Commonwealth. In support, Wallace cites the Commonwealth's repeated failure to bring him down to the courthouse for scheduled hearings, the Commonwealth's request for a continuance due to unpreparedness, and the trial court's granting of inexplicable continuances on its own

---

[5]<u>See</u> <u>Mun. Publ'n, Inc. v. Court of Common Pleas of Phila. County</u>, 489 A.2d 1286, 1288 (Pa. 1985) (noting that the exercise of Extraordinary relief, a/k/a "King's Bench" powers, trumps the normal appellate process); <u>Commonwealth of Pa. v. Lang</u>, 537 A.2d 1361, 1363 n.1 (Pa. 1988) (Pursuant to the doctrine of Extraordinary Relief, 42 Pa. Cons. Stat. Ann. § 726, Supreme Court of Pennsylvania assumed jurisdiction over direct appeal from Court of Common Pleas despite otherwise lacking procedural jurisdiction).

8

motion.

The Commonwealth counters that it should not be wholly charged for the delays because Wallace's numerous changes of counsel and countless motions make him complicit in the delay. As such, the Commonwealth urges that Wallace should not be allowed to profit from his own shortcomings.

Although Wallace is not without fault in contributing to the delay, we agree with the District Court that much of the delay is attributable to the Commonwealth's repeated and inexcusable failure to bring Wallace down to the courthouse for scheduled hearings, as well as the court's granting of unexplained continuances. Whether, as the Commonwealth contends, the failures to deliver Wallace were unintentional, delays attributable to the court are charged against the Commonwealth for the purposes of analyzing speedy trial delays. See Burkett v. Fulcomer, 951 F.2d 1431, 1439-40 (3d Cir. 1991). As such, we agree with the District Court that as of February 12, 2003, the date on which Wallace's post-trial motions were finally decided, the delay was both inexcusable and inordinate.

### 2. Whether Exhaustion Should Still Be Required

Inordinate delay having been established, the burden shifts to the Commonwealth to demonstrate why exhaustion should still be required. Story v. Kindt, 26 F.3d 402, 405 (3d Cir. 1994). The Commonwealth contends that exhaustion is still required because the delay in proceedings is over. We agree. At this point, sentencing has occurred and the

9

post-verdict motions have been decided.   In addition, the Prothonotary of the Pennsylvania Superior Court has been ordered to transmit the entire record and to schedule briefing.  As the District Court has articulated, "all the pieces for disposition of the direct appeal appear to be in place."  The Commonwealth has even expressed support for Wallace's motion for an expedited review of the case, should he choose to file one.

The resumption of previously-stalled proceedings is also apparent in the conduct of the state courts.  Following Wallace's notice of appeal on March 12, 2003, the trial judge, as noted, ordered Wallace to file a concise statement of appeal pursuant to Pa. R. App. P. Rule 1925(b).   The Superior Court then ordered the trial judge as a matter of routine to prepare an opinion, which the judge filed approximately two weeks later.  Once initiated, these proceedings advanced the appeal consistent with the Pennsylvania Rules of Appellate Procedure.  Where, as here,  previously-stalled state proceedings have resumed, we have "instructed district courts to stay their consideration of habeas petitions . . . ."  Cristin v. Brennan, 281 F.3d 404, 411 (3d Cir. 2002) (citing Walker v. Vaughn, 53 F.3d 609, 615 (3d Cir. 1995) ("As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated.")).  Although the state appeals process should have advanced more rapidly, we do not find its delay in this case to have rendered relief for Wallace "effectively unavailable."  See Cristin, 281 F.3d at 411; Stickman, 357 F.3d at 341 ("In deciding

10

whether a delay is excessive, we do consider the degree of progress made in state court.").

Given the progression of events following the disposition of Wallace's post-trial motions and the subsequent efforts made by the trial judge and the Superior Court to move the case forward, we agree with the District Court that Wallace's direct appeal now appears to be "proceeding normally." Burkett, 826 F.2d at 1218. Under the circumstances, and with the assumption that the state will proceed with dispatch, we believe it is appropriate to allow the Pennsylvania Superior Court in the first instance to hear Wallace's claims. Id. We will therefore affirm the District Court's dismissal of Wallace's petition for lack of exhaustion.

On a final note, we see no error in the District Court's dismissal of Wallace's due process claim. Wallace claims his due process rights have been violated by the sheer length of the delay by the state courts in hearing his appeal. Although we have held that delays in post-verdict process may violate the due process clause, Burkett v. Cunningham, 826 F.2d 1208, 1221 (3d Cir. 1987), "delay, even inordinate delay, does not necessarily violate due process[.]" Heiser v. Ryan, 951 F.2d 559, 563 (3d Cir. 1991). Therefore, to determine whether there has been a constitutional violation because of delay, we must weigh and balance the four factors set forth in Barker v. Wingo, 407 U.S. 514, 530 (1971): length of delay, reason for delay, defendant's assertion of his rights, and prejudice to the defendant. See Heiser v. Ryan, 951 F.2d 559, 563 (3d Cir. 1991).

Wallace has endured an inordinate delay, and we do not credit the explanations

11

proffered by the Commonwealth and the Pennsylvania courts. In addition, Wallace has assiduously asserted his rights. The first three <u>Barker</u> factors therefore weigh in Wallace's favor. However, the forth factor – prejudice to the defendant – is unsubstantiated in the record. Although Wallace argues that his ability to succeed on appeal has been prejudiced because the delay has maximized his anxiety and rendered the trial judge unable to perform the sentencing, we do not find this sufficient to impair Wallace's chances on appeal. We conclude that this lack of prejudice, on balance, outweighs the other three <u>Barker</u> factors in establishing that the delay has not caused a constitutional violation.

IV.

For the foregoing reasons, we affirm the order of the District Court dismissing Wallace's petition for a writ of habeas corpus.